UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ALBERT A. GRAYER                                              CIVIL ACTION

VERSUS

DANIEL VANNOY, ET AL.                              NO: 18-CV-00795-BAJ-EWD

RULING AND ORDER

Before the Court is Plaintiff's **Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 3)**. For the reasons stated below, the Court DENIES Plaintiff's motion.

I.   FACTUAL BACKGROUND

Albert A. Grayer ("Plaintiff") is a prisoner at the Louisiana State Prison in Angola, Louisiana. (Doc. 10 at p. 4). Plaintiff filed a Motion for Preliminary Injunction and Temporary Restraining Order against the following parties individually and in their official capacities, all of whom worked at the prison on the relevant dates:

1.  Darrel Vannoy ("Vannoy"), Warden
2.  Daniel Crook ("Cook"), Physisican
3.  Cpt. Bill Lacoste ("Lacoste"), EMT
4.  Cpt. Logan DaiBonne ("DaiBonne"), EMT
5.  Major David Voorhees ("Voorhees"), Correctional Officer
6.  Cpt. D. Turner ("Turner"), Correctional Officer
7.  Cpt. J. Howard ("Howard"), Correctional Officer
8.  Lt. Howard Brown ("Brown"), Correctional Officer
9.  Msgt. M. Groom ("Groom"), Correctional Officer
10. Cpl. Edward Russ ("Russ"), Correctional Officer

(Collectively, "Defendants") (Doc. 1 at p. 2). Plaintiff alleges that as a result of taking a "substantial amount of pills" on July 10, 2018, he was transported to a treatment center by Defendant Lacoste. (Doc. 1). Plaintiff avers that Defendant DaiBonne ordered Defendant Cook to pump Plaintiff's stomach. (Id.). Plaintiff claims that immediately after his stomach was pumped, he was escorted to a holding cell to await transport back to his living quarters. (Id.). Plaintiff asserts that while in the holding cell, he tried to hang himself (Id.). Plaintiff alleges that he was taken down by "security" and further claims that Defendant Cook ordered "security" to "[t]ake him back where he came from, I do not want to see him." (Id.). Plaintiff alleges that after being brought from the treatment facility, he was turned over to Defendant Turner, and subsequently placed on "Mental Health 4-pt."[1] (Id.). Plaintiff alleges Turner brought him to "Tiger I-R #3", an extremely hot, unlit "booth cell." (Id. at p. 3). Plaintiff alleges that after informing Defendant Turner that heat triggers his epileptic seizures, Defendant Turner responded "You just tried to kill yourself. Now you're worried about heat? Maybe the heat will give you what you want." (Id.).

Plaintiff avers that later that night, he awoke excessively sweating, weak, dizzy, confused, and smelling of urine. (Id.). Plaintiff alleges that he requested to be allowed to shower and get some water. (Id.). Plaintiff also requested that he be allowed to "declare himself a medical emergency." (Id.). Plaintiff claims that Defendant Howard informed him that medical personnel had just left his cell, as

---

[1] Apparently, the term "Mental Health 4-pt" is used by Plaintiff to describe "4-point restraints" necessitated due to Plaintiff having been put on "Extreme Suicide Watch". (Doc. 9-3 at p. 3).

2

Plaintiff had been found in his cell shaking, and that Defendant Howard called Defendant DaiBonne for aid. (Id.) Plaintiff alleges that Defendant Howard was previously informed of Plaintiff's propensity for seizures, and that Defendant Howard, upon being notified that Plaintiff was seizing, merely entered Plaintiff's cell, called out his name, and left. (Id.).

Plaintiff further alleges that on or about July 11, 2018, he stopped an EMT, Defendant Groom, in an effort to make a sick call due to Plaintiff being in "4-pt" and unable to complete a sick call himself. (Id.). Plaintiff alleges that Defendant Groom entered his cell, checked his pulse, and encouraged Plaintiff to drink water, at which point Plaintiff informed Defendant Groom that he was handcuffed to the bed and was unable to drink water on his own. (Id.). Plaintiff alleges that Defendant Groom told him that he would return with water, but never returned. (Id.).

Plaintiff avers that while speaking to the EMT[2] he experienced another seizure. (Id. at p. 4). Plaintiff avers that Defendant Lacoste arrived with the ambulance, observed Plaintiff lying unresponsive, and left Plaintiff in his cell. (Id.). Plaintiff makes multiple references to other instances where he suffered from seizures and was provided no aid.[3] (Id.). Plaintiff claims that upon his information and belief, he is regularly left unresponsive in his cell after his epileptic episodes.

---

[2] The Court is unclear as to which EMT Plaintiff is referring.

[3] Plaintiff does not specifically refer to the dates of these separate incidents or provide any other details.

3

Plaintiff now requests the Court to enter an Order temporarily enjoining Defendants to:

1.) Place any offender who suffers from epilepsy under camera observation when a "watch" has been ordered.
2.) Bar Defendants from placing offenders who suffer from epilepsy in booth cells.
3.) Compel all Defendants to comply with any department regulation policies and procedures, post orders, civil service and penitentiary directives. (Id).

Plaintiff specifically requests a preliminary and permanent injunction ordering Defendants Crook, Lacoste, and DaiBonne to:

1.) Stop leaving offenders unresponsive in their cells.
2.) Transfer offenders to the treatment center for medical observation in the event of a seizure.

Plaintiff further requests specific injunctions against Defendants Vorhees, Turner, Howard, Brown, Groom, and Russ, and asks the Court to compel the aforementioned Defendants to call medical personnel when any "medical situation" occurs, and in the event that they do not, that they be terminated.

Defendants claim that Plaintiff has a medical history of hypertension, seizure disorder, retinal detachment, non-compliance with medication, "suicide gestures," self-mutilation, impulse control disorder, depression and anxiety (Doc. 18 at p. 1). Defendants' and Plaintiff's general descriptions of the events leading up to Plaintiff being placed in "booth" cell are largely the same.[4] (Id.) Defendants claims that Plaintiff was placed on "Extreme Suicide Watch" after Plaintiff initially attempted to

---

[4] Defendants state that, upon review of Plaintiff's medical records, Plaintiff's complaint refers to incidents that began on July 10, 2018, as opposed to August 8, and August 17, 2018, as alleged in the complaint. (Doc. 9-3 at p. 1).

4

hang himself. (Id. at p. 2). Defendants point out that the definition of Extreme Suicide Watch is variable depending on the particular inmate, which in this matter, indicated that Plaintiff be subjected to "4-point restraints" to prevent further suicide attempts. (Id. at p. 3).

Defendants allege that at approximately 3:28 P.M., an ambulance was called in response to a possible seizure. (Id.). Defendants allege that Plaintiff was easily aroused by the EMTs, and after an examination, the decision was made not to transfer Plaintiff to the treatment unit. (Id.). Defendants allege that at approximately 8:08 P.M. on that same day, an ambulance was again called to Plaintiffs' cell for a potential seizure. Again, after an examination, Defendants made the decision not to transport Plaintiff to the treatment unit. (Id.). Defendants allege that under the mandates of the Extreme Suicide Watch guidelines, Plaintiff's mental status was assessed at 8:40 PM on July 10, 2018. (Id.). Defendants claim that at that time, Plaintiff denied any medical complaints and had normal readings for pulse, motor function, and sensitivity. (Id.). A similar exam was conducted on July 11, 2018, wherein Defendants allege Plaintiff complained of being weak, and was advised to eat and drink by the EMT. (Id. at p. 4). Defendants claim that on that same day, an ambulance was called on Plaintiff's behalf to respond to a seizure. (Id.). Defendants aver that Plaintiff appeared to be postictal, and had a small amount of vomit near his mouth. (Id.). After an examination, the EMT noted that Plaintiff had voluntary and involuntary movements, notified Defendant Cook, and ultimately the decision was made to not transport Plaintiff to the treatment unit. (Id.).

## II. ARGUMENTS

Plaintiff argues that he is entitled to injunctive relief, because without immediate relief, he is at risk of further seizures and will continue to be irreparably harmed by Defendants' continued inaction in the event that he continues to have periodic seizures. Plaintiff also argues that being placed in the "booth" cell exacerbates his seizure disorder, and requests an injunction preventing him from being placed in such a cell. Plaintiff cites the Ninth Circuit Court of Appeals case *United States v. Odessa Union Warehouse Co-Op.*, 883 F.2d 172, 174 (9th Cir. 1987) to set forth the criteria which must be established to grant injunctive relief[5]:

(1) the likelihood of plaintiff's success on the merits;
(2) the possibility of plaintiff's suffering irreparable injury if relief is not granted;
(3) the extent to which the balance of hardships favors the respective parties; and
(4) in certain cases, whether the public interest will be advanced by the provision of preliminary relief.

Plaintiff alleges that Defendants have violated his 8th Amendment protections against cruel and unusual punishment by subjecting him to incarceration in the "booth" cells, and ignoring Plaintiff during his medical episodes. Plaintiff further argues that he has a "serious medical need" and that Defendants acted with

---

[5] The Court notes that Plaintiff incorrectly quotes the test set forth in *Odessa* in his pleading, but produced the correct citation nonetheless. In his motion, Plaintiff states that "the moving party must show either: (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in favor its favor (sic)." (Doc. 8-1 at p. 1).

6

"deliberate indifference" towards those needs, but does not further argue or attempt to establish any of the other factors set forth in *Odessa*.

Defendants cite *Snow v. Lambert*, CV 15-567-SDD-RLB, 2015 WL 5071981, at *1 (M.D. La. Aug. 27, 2015) (quoting *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987)) to set forth the four criteria the 5th Circuit uses to evaluate requests for injunctive relief. The four *Lambert* factors are identical to the *Odessa* factors cited by Plaintiff. Defendants further claim that Plaintiff failed to exhaust his administrative remedies in this matter, thereby failing to establish a "likelihood of success on the merits."

### III. LEGAL ANALYSIS

It "would be inequitable" to hold *pro se* litigants to strict procedural standards and thereby punish such litigants "for lacking the linguistic and analytical skills of a trained lawyer." Perez, 312 F.3d at 194. Nonetheless, courts "still require *pro se* parties to fundamentally 'abide by the rules that govern the federal courts.'" *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir.2014) (citing *Frazier v. Wells Fargo Bank, N.A.*, 541 Fed.Appx. 419, 421 (5th Cir.2013)). Thus, courts have held, for example, that "[p]ro se litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, ... and brief arguments on appeal." *In re Emergency Room Mobile Servs., L.L.C.*, 529 B.R. 676, 683 (N.D. Tex. 2015).

Plaintiff has not satisfied the basic elements required for the imposition of temporary restraints as set forth by *Clark*. Plaintiff cites the correct standard, albeit

in the incorrect jurisdiction, but fails to expand his analysis of the facts of his case past the "irreparable harm" criteria. The Court is called to review a *pro se* litigant's complaint liberally, so as to glean a cause of action from often inartfully pleaded complaints. The Court has complied with this mandate. The Court cannot, however, be expected to "extract blood from a stone" when a *pro se* litigant does not allege even the bare minimum facts to support a cause of action. As Plaintiff has not put forth arguments addressing all of the requisite criteria for the issuance of a temporary restraining order, the Court cannot reach the full merits of Plaintiff's request. Plaintiff's motion is DENIED.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 3)** is **DENIED.**

Baton Rouge, Louisiana this 28th day of January, 2019.

JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA